**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA ex rel. NICK COLON, | ) ) ) | |
| Petitioner, | ) ) | |
| v. | ) ) | 11 C 8348 |
| NEDRA CHANDLER, Warden of the Dixon Correctional Facility, | ) ) ) ) | Judge John Z. Lee |
| Respondent. | ) | |

## MEMORANDUM OPINION AND ORDER

Nick Colon has filed an amended petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), challenging his state criminal conviction for first degree murder. For the reasons set forth in this Memorandum Opinion and Order, the Court denies the petition.

## Facts[1]

On August 13, 1996, Felix Morales was murdered. (Resp't's Ex. A, Def.'s Postconviction Opening Br. 2.) Colon and three co-defendants were indicted for their participation in the murder. (Resp't's Ex. D, People v. Colon, No. 1-08-0469, slip op. at 2 (Ill. App. Ct. Aug. 31, 2010).) A jury convicted Colon of first degree murder, and he was sentenced to fifty-five years of imprisonment. (*Id.*) The evidence at trial established that Colon, a member of the Maniac Latin Disciples, shot and killed Morales, a member of the Latin Kings, at a gas station in retaliation for two other gang

---

1 Pursuant to 28 U.S.C. § 2254(e)(1), the state court's recitations of fact are presumptively correct in habeas proceedings. *Sumner v. Mata*, 449 U.S. 539, 547 (1981). Because petitioner has not attempted to rebut the presumption with clear and convincing evidence, see 28 U.S.C. § 2254(e)(1), the factual background is taken from the state appellate court's rulings

murders that occurred five days earlier. (*Id.*) At Colon's trial, Harold Garcia, who is also a Maniac Latin Disciple, stated that he was testifying solely to avoid prosecution, claimed not to know Colon, did not recall answering questions before the grand jury. (Resp't's Ex. M, Resp't-Appellee's Br., Ex. A, People v. Colon, 1-99-1105, slip op. at 7.) However, Garcia's trial testimony was impeached when the following portion of Garcia's sworn grand jury testimony was admitted into evidence: "After that Nicky [Colon] was like, 'I popped that nigger. I fucked them kings.' . . . He motioned with his hand like he's shooting a gun." (*Id.* at 9.) In addition, Michael Vasquez, a member of the same gang as Colon and Colon's co-defendant Edward Serrano, testified that he saw Colon and Serrano together in Serrano's car immediately before the shooting near the scene of the crime. (*Id.* at 5.) Prior to Morales' murder, Serrano told a police officer that he wanted to kill a member of the Latin Kings. (*Id.* at 14.) Moreover, Serrano admitted being at the gas station at the time of the shooting. (*Id.*) In addition, Serrano brought his car to an auto body shop to be painted two days after the shooting. (*Id.*) John Morrow, an eyewitness who had stopped at the gas station after work, testified that as Morales lay on the ground, he saw a man, whom he later identified as Colon from a line-up and in court, fire two shots into Morales' chest. (*Id.* at 3.)

In 2000, Colon appealed his conviction. (*See* Resp't's Ex. A, Def.'s App. Br. (filed July 27, 2000).) In August 2001, the Illinois Appellate Court affirmed his conviction. (*See* Resp't's Ex. M, Ex., *People v. Colon*, No. 99-1105, slip op. at 20 (Ill. App. Ct. Aug. 20, 2001.) Colon then petitioned for leave to appeal to the Illinois Supreme Court. (See Resp't's Ex. E, Pet. Leave Appeal.) On February 6, 2002, the Illinois Supreme Court denied the petition for leave to appeal. (*See* Resp't's Ex. F, *People v. Colon*, No. 92421, slip op. at 1 (Ill. Feb. 6, 2002).

---

on Colon's direct appeal and his amended post-conviction petition.

On April 17, 2007, after the Illinois Appellate Court reversed the dismissal of his original postconviction petition and remanded the matter, Colon filed an amended postconviction petition. (*See* Resp't's Ex. Q, Am. Postconviction Pet. 1-29.) On January 30, 2008, the trial court dismissed the amended postconviction petition. (Am Pet. Writ Habeas Corpus 3.) On August 21, 2009, Colon appealed. (Resp't's Ex. L, Def.'s Opening Br. 1-59.) On August 31, 2010, the Illinois Appellate Court affirmed the dismissal of his amended postconviction petition. (Resp't's Ex. O, People v. Colon, No. 1-08-0469, slip op. at 14 (Ill. App. Ct. Aug. 31, 2010).) Colon petitioned for leave to appeal to the Illinois Supreme Court, but on November 24, 2010, that court denied his petition. (Am. Pet. Writ Habeas Corpus 3.)

Colon asserts the following grounds for habeas relief:

(1) the trial court's dismissal of his postconviction petition was erroneous because the affidavit of co-defendant Ignacio Arroyo presented newly-discovered evidence supporting Colon's free-standing claim of innocence;

(2) his appellate counsel provided ineffective assistance of counsel for failing to challenge on direct appeal the trial court's use of IPI Criminal 4th No. 3.15 ("IPI 3.15"); and

(3) he was denied a fair trial because the jury was given IPI 3.15.

(Am. Habeas Petition 5.)

## Discussion

As an initial matter, Colon's first habeas ground, that the trial court's dismissal of his postconviction petition was erroneous because the affidavit of co-defendant Arroyo presented newly discovered evidence supporting Colon's free-standing claim of innocence, is not cognizable because it does not rely on a federal right. The federal Constitution does not require states to provide

3

collateral review of criminal convictions. *Pennsylvania v. Finley*, 481 U.S. 551, 557 (1987). "Unless state collateral review violates some independent constitutional right . . . , errors in state collateral review cannot form the basis of federal relief." *Montgomery v. Meloy*, 90 F.3d 1200, 1206 (7th Cir. 1996). Colon merely argues that the trial court's dismissal of his postconviction petition was erroneous under state law and whether or not the trial court correctly applied state law in dismissing Colon's postconviction petition does not provide a basis for habeas relief. Colon does not argue that the state collateral review violated some independent constitutional right. Thus, the Court denies Colon's amended habeas petition as to the first ground.

With regard to Colon's second and third habeas grounds, under AEDPA, a federal court "deferentially review[s] the decision of the last state court to address [petitioner's] claims on the merits." *See Harris v. Hardy*, 680 F.3d 942, 948 (7th Cir. 2012). A federal court may not grant habeas relief unless the state court's adjudication of a claim "was contrary to, or involved an unreasonable application of clearly established Federal law as determined by the Supreme Court of the United States," or "was based on an unreasonable determination of the facts in light of the evidence presented." 28 U.S.C. § 2254(d). "Under the 'unreasonable application' of law clause, 'a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.'" *Harris*, 680 F.3d at 948 (quoting *Williams v. Taylor*, 529 U.S. 362, 413 (2000)). "This means that the state court's application of law must have been objectively unreasonable." *Id.* (quotation omitted).

Colon argues that his appellate counsel's failure to challenge the court's use of IPI Criminal 3.15 constituted ineffective assistance because the Illinois Appellate Court has since held that using IPI Criminal 3.15 is plain error when it may have mistakenly led the jury to rely on a single factor,

4

rather than a variety of factors, in deciding whether the eyewitness identification testimony was reliable. *People v. Gonzalez*, 761 N.E.2d 198, 208 (Ill. App. Ct. 2001); *see People v. Herron*, 830 N.E.2d 467, 483-84 (Ill. 2005) (holding that where case turns on credibility of a single eyewitness, the use of IPI 3.15 is plain error); (Resp't's Ex. L, Pet'r-Appellant Br. at 33-34; Resp't's Ex. D, *People v. Colon*, 1-08-0469, slip op. at 7-11 (Ill. App. Ct. Aug. 31, 2010). The jury instruction at issue in the instant case, IPI 3.15, entitled "Circumstances of Identification," provided:

> When you weigh the identification testimony of a witness, you should consider all the facts and circumstances in evidence, including, but not limited to the following:
>
> [1] The opportunity the witness had to view the offender at the time of the offense.
>
> [or]
>
> [2] The witness's degree of attention at the time of the offense
>
> [or]
>
> [3] The witness's earlier description of the offender.
>
> [or]
>
> [4] The level of certainty shown by the witness when confronting the defendant.
>
> [or]
>
> [5] The length of time between the offense and the identification confrontation.

Illinois Pattern Jury Instructions, Criminal, No. 3.15 (4th ed. 2003). After *Gonzalez*, the instruction was changed to omit the word "or" between each of the five factors. *See* Illinois Pattern Jury Instructions, Criminal, No. 3.15 (4th ed. Supp. 2003).

Under AEDPA, "ineffective assistance of counsel is a mixed question of law and fact

reviewed *de novo* with a strong presumption that the attorney performed effectively." *Allen v. Chandler*, 555 F.3d 596, 600 (7th Cir. 2009). Under *Strickland v. Washington*, to establish ineffective assistance of counsel, a petitioner must show both that his counsel's performance fell below an objective standard of reasonableness under prevailing professional norms, and that the deficient performance prejudiced his defense. 466 U.S. 668, 688-93 (1984); *see Ebert v. Gaetz*, 610 F.3d 404, 411 (7th Cir. 2010). "Judicial scrutiny of counsel's performance must be highly deferential . . . ." *Strickland*, 466 U.S. at 689. A habeas petitioner "must do more than show he would have satisfied *Strickland*'s test if his claim were being analyzed in the first instance. . . . [H]e must show that the [Illinois Appellate Court] applied *Strickland* to the facts of his case in an objectively unreasonable manner." *Emerson v. Shaw*, 575 F.3d 680, 685 (7th Cir. 2009). Simply put, the court's decision must be "well outside the boundaries of permissible differences of opinion." *Hardaway v. Young*, 302 F.3d 757, 762 (7th Cir. 2002).

On July 27, 2000, Colon's appellate counsel filed the brief on direct appeal. (*See* Resp't's Ex. A, Def.'s App. Br.) In August 2001, the appellate court affirmed Colon's conviction. (*See* Resp't's Ex. M, Ex., *People v. Colon*, No. 99-1105, slip op. at 20 (Ill. App. Ct. Aug. 20, 2001).) On September 25, 2001, Colon filed a pro se petition for leave to appeal to the Illinois Supreme Court. (*See* Resp't's Ex. E, Pet. Leave Appeal.) On November 26, 2001, in the *Gonzalez* case, the Illinois Appellate Court ruled that the trial court's use of IPI 3.15 was plain error because the evidence was closely balanced, the state's case was based solely on circumstantial evidence through the identification testimony of the victims, and the possibility that the jury relied on a single factor in determining whether the identification testimony was reliable deprived defendant of a fair trial. 761 N.E.2d at 203, 208. On February 6, 2002, in the instant case, the Illinois Supreme Court denied

6

Colon's petition for leave to appeal. (*See* Resp't's Ex. F, *People v. Colon*, No. 92421, slip op. at 1 (Ill. Feb. 6, 2002).

Because *Gonzalez* was decided after the appellate court had already affirmed his conviction, this Court does not find objectively unreasonable the appellate court's holding that Colon's appellate counsel was not ineffective when he failed to argue that *Gonzalez* required the reversal of his conviction. Further, the Court notes that Colon does not argue (nor did he argue at any point during his state court proceedings) that any IPI 3.15 jury instruction objection had been preserved by trial counsel, his trial counsel was ineffective for having failed to preserve any such objection, or that his appellate counsel was ineffective for having failed to argue that his trial counsel provided ineffective assistance of counsel by not preserving any objection. Given the deference built into the *Strickland* analysis, the Court holds that state appellate court's conclusion is not an unreasonable application of the first *Strickland* factor.

Next, the Court addresses *Strickland*'s prejudice component. The Court analyzes this portion of Colon's ineffective assistance of counsel claim (Colon's second habeas ground) together with Colon's due process claim (his third habeas ground) because if he cannot establish that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different or that the trial court's use of IPI 3.15 violated his due process rights, his habeas petition necessarily fails.

*Strickland*'s prejudice component focuses on whether counsel's deficient performance renders the result of the adversarial process unfair. 466 U.S. at 686. To establish prejudice, a habeas petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.

7

With regard to due process, "[t]he burden of demonstrating that an erroneous instruction was so prejudicial that it will support a collateral attack on the constitutional validity of a state court's judgment is even greater than the showing required to establish plain error on direct appeal." *Henderson v. Kibbe*, 431 U.S. 145, 154 (1977). "The question in such a collateral proceeding is whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process, not merely whether the instruction is undesirable, erroneous, or even universally condemned." *Id.* (quotations omitted); *Love v. Young*, 781 F.2d 1307, 1318 (7th Cir. 1986); *United States ex rel. Palmer v. DeRobertis*, 738 F.2d 168, 170 (7th Cir. 1984). In other words, if the probability that the jury instruction substantially affected the jury deliberations seems remote, there has been no due process violation. *Henderson*, 431 U.S. at 155.

The Court iterates that with regard to this component, the Court employs a *de novo* review not only because ineffective assistance of counsel is a mixed question of law and fact, but also because the appellate court did not explicitly make a prejudice or due process determination when denying Colon's amended postconviction petition. *See Steffes v. Pollard*, 663 F.3d 276, 281-82 (7th Cir. 2011); (Resp't's Ex. D, *People v. Colon*, No. 1-08-0469, slip op. at 7-11). However, in discussing the merits of Colon's direct appeal and postconviction petition, the court made factual findings that are pivotal to the analysis of both Colon's ineffective assistance of counsel claim as well as his due process claim based on the jury instruction issue, and the Court will employ the deferential standard of review that the AEDPA prescribes in evaluating these findings. *See Promotor v. Pollard*, 628 F.3d 878, 888 (7th Cir. 2010); (Resp't's Ex. M, Resp't-Appellee's Br., Ex. A, *People v. Colon*, 1-99-1105, slip op. (Ill. App. Ct. Aug. 20, 2001).

Colon has not established that he was prejudiced by his appellate counsel's failure to raise the issue regarding the use of IPI 3.15 or that the use of IPI 3.15 infected the entire trial such that it

8

violated due process because, eyewitness identification aside, the government presented significant evidence against Colon at trial such that it is not reasonably probable that the result of the trial would have been different. The jury was provided with the impeaching sworn grand jury testimony of Harold Garcia, a Maniac Latin Disciple, that Colon had confessed to Morales' shooting: "After that Nicky [Colon] was like, 'I popped that nigger. I fucked them kings.' . . . He motioned with his hand like he's shooting a gun." (*Id.* at 8-9.) In addition, Michael Vasquez, another fellow member of the Maniac Latin Disciples, testified that he saw Colon and Serrano together in Serrano's car immediately before the shooting near the scene of the crime. (*Id.* at 5.)[2] Prior to Morales' murder, Serrano told a police officer that he wanted to kill a member of the Latin Kings. (*Id.* at 14.) Moreover, Serrano admitted being at the gas station at the time of the shooting. (*Id.*) In addition, Serrano brought his car to an auto body shop to be painted two days after the shooting. (*Id.*) In sum, given that Colon confessed to a fellow gang member that he shot Morales, Colon was seen with Serrano immediately prior to the shooting, Serrano admitted he was at the gas station at the time of the shooting and subsequently attempted to paint the car he had driven Colon to the scene of the crime, the evidence at trial was not closely balanced such that Morrow's eyewitness testimony was the linchpin of the case. In his habeas petition, Colon has not even attempted to rebut the presumption that the state courts' factual findings are correct. Reviewing the state court's findings deferentially, the Court holds that Colon has not established a reasonable probability that, but for his appellate counsel's purported error in raising the issue on direct appeal, the result of the proceeding would have been different. Further, he has not shown that the trial court's use of IPI 3.15 so infected

---

2 Colon's habeas petition does not challenge the eyewitness identification testimony of Vasquez, and merely challenges the eyewitness identification testimony of John Morrow.

the entire trial that the resulting conviction violates due process. Therefore, Colon's second and third habeas grounds do not afford him habeas relief.

## Conclusion

For the reasons provided in this Memorandum Opinion and Order, the Court denies Colon's amended petition for writ of habeas corpus [doc. no. 1]. This case is hereby terminated.

**SO ORDERED**                          **ENTER: August 9, 2012**

                                                 **JOHN Z. LEE**
                                                 **U.S. District Judge**